2019 PA Super 53

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID SANTANA | : | |
| | : | |
| Appellant | : | No. 3488 EDA 2017 |

Appeal from the Judgment of Sentence July 18, 2017
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000031-2017

BEFORE: BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

DISSENTING OPINION BY BOWES, J.:      **FILED FEBRUARY 22, 2019**

This case presents a difficult issue, and the Majority offers a well-reasoned analysis to support its conclusion that Santana was not disadvantaged by retrospective application of SORNA's reporting requirements given that he was subject to a lifetime registration in New York at the time SORNA was enacted. Nonetheless, I would hold that our Supreme Court's decision in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), and this Court's application of *Muniz* in *Commonwealth v. Luciani*, 2018 PA Super 355, 2018 WL 6729854 (Pa.Super. December 24, 2018), mandate that we vacate Santana's judgment of sentence and conviction as violative of the *ex post facto* clause of the Pennsylvania constitution.

The Majority's holding that Santana was not disadvantaged by retroactive application of SORNA rests upon its determination that "the lifetime registration requirement imposed under SORNA did not increase his

punishment because he was already subject to a lifetime registration requirement in New York." Majority Memorandum at 13. The same rationalization was offered by the trial court in *Luciani*: it posited that because the defendant in that case was subject to lifetime registration at the time he committed his crime in 2010, "'whether under SORNA, Megan's Law III, or its predecessor, Megan's Law II, [the defendant] would be a lifetime registrant.'" *Luciani*, *supra* at *3 (quoting the trial court opinion). This Court rejected the contention, holding that because SORNA is criminal punishment under *Muniz* and SORNA was enacted after the conduct of the defendant at issue, "application of SORNA would inflict greater punishment on [the defendant] than the law in effect at the time he committed his crime, and thus the statute cannot be applied retroactively to [him] without violating the *ex post facto* clause of the Pennsylvania constitution." *Id*. at *4 (cleaned up).

Santana committed rape in 1983. Applying SORNA's registration obligations to him would inflict greater punishment on him than the law in effect at the time of his criminal conduct. As such, under *Luciani* and its interpretation of *Muniz*, the imposition of SORNA's registration requirements on Santana violates Pennsylvania's *ex post facto* clause. Accordingly, I would hold that Santana's conviction and sentence are illegal and grant the requested relief.

Even if the Majority is correct that, because Santana's obligations under SORNA are based upon his duty to register as a sex offender in another state

rather than upon commission of a sex crime in Pennsylvania, the relevant inquiry is whether SORNA's enactment disadvantaged Santana when he moved to Pennsylvania with notice that he would be subject to SORNA, I would nonetheless conclude that Santana is entitled to relief. First, New York's Sex Offender Registration Act ("SORA"), unlike Pennsylvania's SORNA, has withstood *ex post facto* challenges because it has been determined to be non-punitive. **See**, **e.g.**, **Doe v. Cuomo**, 755 F.3d 105, 110-12 (2d Cir. 2014) (holding neither registration nor notification aspects of SORA were punitive); **People v. Parilla**, 970 N.Y.S.2d 497, 502 (N.Y. App. Div. 2013) ("These increased registration and reporting requirements are not excessive in relation to the public safety purpose of the statute and do not transform SORA into an additional statutory penalty."). As such, it appears that Santana, having gone from a non-punitive registration and notification system to the punitive provisions of SORNA, is disadvantaged by applying SORNA to him.

Second, an examination of the registration and notification provisions of the respective laws reveals SORNA to be more burdensome. In holding that Santana was not disadvantaged, the Majority relies upon the trial court's representation that New York's registration requirements are not significantly different than SORNA's. Majority Opinion at 14. Specifically, the Majority notes that the trial court observed the following:

> As a Level 3 sex offender under New York's SORA, [Santana] was designated as a lifetime registrant and was required to personally verify his address with the local law enforcement agency every ninety days and to have a new photograph taken. Furthermore,

he was required to register within 10 calendar days after any changes to his address or internet accounts/identifiers. Pennsylvania's SORNA had similar lifetime reporting requirements. However, any changes to address or internet accounts/identifiers had to be reported within 3 business days.

*Id*. at 14-15 (quoting Trial Court Opinion, 10/17/17, at 9 n.13).

In determining that retroactive application of SORNA was unconstitutional, the lead opinion in **Muniz** examined both SORNA's reporting obligations and its notification provisions in great detail in concluding that SORNA, unlike prior statutes that survived *ex post facto* challenges, crossed the line from imposing collateral civil consequences to imposing criminal punishment. Specifically, the Court noted that, as a Tier III offender, Muniz was subjected to a direct restraint in that he was

required to appear in person at a registration site four times a year, a minimum of 100 times over the next twenty-five years, extending for the remainder of his life. In fact, this is the minimum number of times appellant will have to appear in person, and does not account for the times he must appear due to his "free" choices including "moving to a new address or changing his appearance."

**Muniz**, **supra** at 1210–11 (cleaned up).

The Court also concluded that the registration requirements of SORNA, at approved registration sites established by the state police, were more akin to probation than prior laws. **Id**. at 1213. Further, the Court determined that the notification elements of SORNA are more comparable to public shaming than laws previously upheld, given the substantial amount of personal

information SORNA places on its website in "the context of our current internet-based world[.]"[1] *Id*. at 1213, 1215-16.

By contrast, a level three offender in New York also must appear personally quarterly, and a new photograph may be taken if his her appearance changed, but it occurs at the place of "the local law enforcement agency" rather than at a specially-designated registration site. *See* N.Y. Correct. Law § 168-f(3). Further, the offender is given ten calendar days, rather than three business days, to register changes in status or internet usage, and, importantly, this done by written statement rather than personal appearance. *See* N.Y. Correct. Law § 168-f(4) (requiring registration, rather than personal appearance, for changes "of address, internet accounts with internet access providers belonging to such offender, internet identifiers that such offender uses, or his or her status of enrollment, attendance, employment or residence at any institution of higher education."); N.Y. Correct. Law § 168-i (providing that registration and verification consists of "a statement in writing signed by the sex offender"). Moreover, the notification provisions of SORA are not identical to those of SORNA, a relevant consideration that the Majority fails to consider. *See Parilla*, *supra* at 504

_____

[1] "[T]he information SORNA allows to be released over the internet goes beyond otherwise publicly accessible conviction data and includes: name, year of birth, residence address, school address, work address, photograph, physical description, vehicle license plate number and description of vehicles." *Commonwealth v. Muniz*, 164 A.3d 1189, 1215–16 (Pa. 2017) (citing 42 Pa.C.S. § 9799.28(b)(1)–(8)).

(discussing that SORA allows publication of the offender's "name, age, photo, home address, work address, crime, modus of operation, type of victim targeted, and any college or university in which they are enrolled"). Accordingly, I disagree with the Majority that SORA and SORNA placed substantially-similar burdens on Santana.[2]

Finally, the Majority emphasizes the trial court's concern that applying **Muniz** to the instant case creates a safe haven here for sex offenders seeking

_____

[2] The Majority concludes that Santana waived any argument that SORNA's registration and notification requirements are more burdensome than those of New York's SORA, as he contends that the differences are irrelevant to the question of whether SORNA can apply to his 1983 offense. Majority Opinion at 14 n.8. I disagree.

First, Santana is correct: because under **Muniz**, subjecting anyone to SORNA's registration and notification requirements constitutes punishment, the relevant inquiry is whether he could be required to comply with SORNA for conduct committed prior SORNA's enactment. As such, the differences between his obligations under New York law and Pennsylvania law at the time he relocated to Pennsylvania are irrelevant to the question of whether Pennsylvania can subject him to a punishment that did not exist at the time he committed his crime. Under **Muniz** and **Luciani**, the answer to that question is no.

Second, the Majority's conclusion that Santana's challenge to the constitutionality of his conviction fails because he was not disadvantaged by application of SORNA's requirements is entirely based upon its comparison of his prior obligations in New York to those of SORNA. Indeed, it supports its determination by relying upon the trial court's evaluation of the respective provisions SORA and SORNA. **See** Majority Opinion at 14. Whether a statute is an unconstitutional *ex post facto* law is a question of law subject to *de novo*, plenary review. **Commonwealth v. Muniz**, 164 A.3d 1189, 1195 (Pa. 2017). With this standard of review, this Court cannot blindly accept the trial court's reading of the statutes at issue rather than independently review the language of the law *de novo*. Therefore, I do not believe waiver is apt.

- 6 -

to avoid registration requirements. Majority Memorandum at 15 (quoting Trial Court Opinion, 10/17/17, at 11). This overlooks the fact that, while it cannot punish people retroactively, our legislature is free to impose retroactive civil consequences upon out-of-state sex offenders who move to Pennsylvania. As this Court noted in **Luciani**, the General Assembly has enacted legislation "to cure SORNA's constitutional defects." **Luciani**, **supra** at *4 (discussing Acts 10 and 29 of 2018). Indeed, the **Luciani** Court remanded to the trial court to determine what newly-enacted, non-punitive registration requirements applied to the defendant in that case after vacating his judgment of sentence based upon **Muniz**. I believe the same is appropriate in this case.

Therefore, I respectfully dissent.